IN THE MATTER OF THE APPLICATION OF THE LONG DOCK COMPANY AND THE ERIE RAILROAD COMPANY FOR THE DETERMINATION OF THE CHARACTER OF THEIR PROPERTY IN JERSEY CITY ALLEGED TO BE USED FOR RAILROAD PURPOSES, ASSESSED BY THE STATE BOARD OF ASSESSORS, AND ALSO ASSESSED BY THE LOCAL AUTHORITIES OF JERSEY CITY.

Submitted July 5, 1907—Decided November 26, 1907.

In a proceeding to determine the character of lands of a railroad company doubly assessed, located within a city, for the purposes of taxation pursuant to section 28 of the revised act for the taxation of railroad and canal property (*Pamph. L.* 1888, *p.* 269; *Gen. Stat., p.* 3324), it appearing that the property in question was a ferry building and ferry slips leading from the terminal station of the company, located at tidewater on the shore of a navigable river, in connection with which the company was operating a ferry under the authority of sections 19 and 20 of the Railroad act (*Rev., Pamph. L.* 1903, *pp.* 645, 656; *Gen. Stat., p.* 2647), it was *held* that, following the decision of the court *In re* the application of the United Railroad and Canal Company, decided at November Term, 1907, and for the reasons stated in the opinion in that case, the assessment of the property by the state board of assessors as property used for railroad purposes must be sustained and the assessment made by the local authorities must be set aside.

On rule to show cause.

Before Justices HENDRICKSON, PITNEY and TRENCHARD.

For the applicants, *Collins & Corbin.*

For the State of New Jersey, *Robert H. McCarter,* attorney-general.

For the mayor and aldermen of Jersey City, *Robert Carey.* and *George L. Record.*

The opinion of the court was delivered by

HENDRICKSON, J. This is an application by the Long Dock Company and the Erie Railroad Company, lessee of the former, for a summary determination of the character of certain lands of the applicants located in Jersey City, for the purposes of taxation, pursuant to the authority of section 28 of the revised act for the taxation of railroad and canal property. *Pamph. L.* 1888, *p.* 269; *Gen. Stat., p.* 3324.

This dispute arises over the assessments for the year 1905 made upon the companies' passenger terminal and ferry buildings at or near the foot of Pavonia avenue, in Jersey City. This property was assessed by the state board of assessors for said year as property used for railroad purposes, part of it being a portion of the main stem of the Long Dock Company, one hundred feet wide, the residue and greater part being so-called second-class property. It constitutes a tract having an area of four and twenty-five hundredths acres lying between the exterior line for piers and the exterior line for solid filling, and is part of the terminal passenger station of the Erie railroad.

Part of this property was also assessed for that year by the local assessors of Jersey City as follows:

"Erie R. R.          Block 17.              Lot 'Ferry.'
Value of real estate                    Total amount taxes
     $250,000.                              $6,825."

Both assessments were made at the local rate of $27.30 per $1,000.

The city does not claim to cover by its assessment the covered platforms under which alighting passengers proceed to the passenger station, which includes a waiting-room, ticket offices, restaurant, &c., nor the passenger station itself, a building of two and three stories, but confines it to a building or shed of one story only, known as railroad passenger concourse, through which the passengers make entrance to the ferry boats and to the floating bridges leading to the boats, the contention being that this part of the property is devoted to the ferry business alone, and is not a railroad use. This court has decided this contention against the city in the case of the application of the United New Jersey Railroad and Canal Company for a summary determination as to the character, for purposes of taxation, of its terminal, station and buildings at the foot of Exchange place, Jersey City, argued at the February Term, 1907, and decided at the present November Term. The circumstances of that case are quite similar to those in the case under consideration. A majority of the justices now sitting also participated in the decision in that case. It was there held, among other things, that this principle of exemption from local taxation must be extended to the ferry-house, or such parts thereof as are reasonably necessary to the carrying on of such ferry for the transportation of the passengers and freight of the applying companies arriving by their trains; that such use becomes a railroad purpose under the Railroad act. Following that case, we have determined this contention of the city against it in this case, upon the grounds stated in the opinion on file in the United New Jersey Railroad and Canal Company case, *supra.*

But it is further contended for the city that conceding that, so far as the transportation of the companies' passengers and freight carried by their trains is concerned, the use would be a railroad use, still that the use of this ferry property, in connection with the local business from Jersey City and vicinity, is not a railroad use, and that it appearing that the proportion of the use for these different purposes is ascertainable

from the proofs, the local tax should be sustained in proportion to the use for non-railroad purposes. Counsel for the city have found no authority to support such a doctrine, and we know of none.

Where such conditions have been found to exist it has been held that the character of such property for the purposes of taxation will ordinarily depend upon its main or principal use, and upon that principle it was held in the United New Jersey Railroad and Canal Company case, *supra,* that a portion of the building used for ferry purposes was subject to local taxation. But we do not find that such an exception applies in the present case. It is entirely clear that the buildings now under consideration were reasonably necessary to the carrying on of the ferry in connection with the through traffic of the companies, and the only question left is, Was its character changed by its diversion to other than railroad purposes? The only evidence as to the amount and character of the ferry business was that produced by the companies. The evidence tended to show that the ferry boats are run to meet the trains and to accommodate railroad passengers, and that during the month of May, 1905, which was considered a fair average month, one million five hundred thousand railroad passengers and two hundred and ninety-five thousand local passengers passed through the ferries; that in the same month seventy-two thousand trucks, forty-two thousand of which were connected with the railroad business and thirty thousand of which were local in character, passed over the ferries. It appeared that a large part of the forty-two thousand trucks belonged to or were being used by consignees of milk and other food-supplies for the market, and other freight, who received the shipments at the baggage depot of the companies and thereby transported them to New York by way of the ferries. It was therefore contended for the city that the trucks so used must be classed as local traffic also. But it is unnecessary to determine that question, for, conceding this contention to be correct, we think the evidence fairly shows that the main or principal use of the property in question was in connection with the companies' railroad traffic

proper, and that upon the principle laid down in the opinion in the United New Jersey Railroad and Canal Company case, *supra,* it must be classed as property used for railroad purposes.

The result is that the assessment by the state board must stand and that made by the local authorities of Jersey City must be set aside. The rule may be so entered, but without costs to either party.